EATON & BETTERTON *v.* PENNYWIT.

In a suit by attachment to subject the property of non-resident debtors to the payment of their debts, the courts have jurisdiction over the property, within the State, sought to be subjected to such debts, though it be a steamboat; the action being *in personam*, and not *in rem*, against the boat.

Where a non-resident defendant, not served with process to appear, appears by attorney, he is bound by the judgment ; but in a suit upon such judgment in a sister State, he may successfully defend by showing that the attorney who entered an appearance for him had no authority to do so.

Where in a suit by attachment on property alleged to belong to several non-residents, upon one of whom there was no personal service of process, but an attorney appeared and contested the case in the name of the *defendants;* *Held:* there is a strong *prima facie* presumption that such defendant did appear by attorney, which is not rebutted by proof that he did not reside nor was present in the State during the pendency of the proceedings in court.

*Appeal from Pulaski Circuit Court.*

Hon. LIBERTY BARTLETT, Circuit Judge.

WATKINS & ROSE, for appellants.

Although personal service was had on only one of the defendants, yet all through the record the showing is, that the *defendants* appeared, by their attorneys, and defended the suit. The only evidence offered by the defendant is, that he was not in Louisiana, so that personal service could be had upon him; but, as he appeared by attorney, the court had as complete jurisdiction over him as if he had been served with notice. The judgment was conclusive upon him in Louisiana, and must be so considered here. *11·Ark., 162; 22 Ark., 389.* The record shows the appearance of defendant, and the statement is conclusive upon him. *11 Ark., 368; 2 McLean R., 511; 1 Peters, C. C., 155.* The suit was a personal action, though a steamboat

was attached, and not a libel against the boat, as in *The Trevor v. Wallace, 4 Wallace, 555.*

GARLAND & NASH, for appellee.

To bind the defendant in this case there must be a positive showing that he was served with process, or that he waived that by entering his appearance. *20 Ark., 12; 16 Ark., 46; 13 Ark., 35.* The service by publication bound the property attached, but had no extra territorial force. *Westlake Int. Law, 228 (note z.); Story Conf. of Laws, sec. 549; Amer. Law Reg. for Nov., 1866, p. 1, et. seq.* The entry in the record that the defendants came by attorney, meant only those who had given the bond, or, having been served with process, were legally bound to appear, and not to this defendant, who was a non-resident. *Murphy v. Williams, 1 Ark., 376; Kimball v. Merrick, 20 Ark., 12.* The court had no jurisdiction; this being a suit attaching a steamboat, which the court could not do. *The Hine v. Trevor, 4 Wallace (U. S.) Rep., 555.*

CLENDENIN, J.

The appellants instituted their action, in debt, based upon the transcript of a judgment rendered in the fourth district court of New Orleans, in the State of Louisiana; service was had, the defendant appeared and filed two pleas: 1st, *nul tiel record*; and 2d, a special plea, setting up, in substance, "that at the time when the suit or motion in which the judgment in the declaration in this behalf mentioned was enumerated, and from thence up to and until, and at the time when the said recovery in the said declaration stated was rendered, as aforesaid, said defendant was a citizen of the State of Arkansas, and resided and was domiciled therein, and was not a resident or citizen of the State of Louisiana, and said defendant was not served with process in said suit, and had no notice whatever of the pendency of the same; and said defendant

never appeared to said suit, either in person or by attorney, and no one duly authorized entered his appearance to such suit." To these pleas issues were regularly made up, and the case submitted to the court, sitting as a jury, who, upon the trial, rejected the transcript of the judgment offered as evidence by the plaintiffs, heard the testimony offered by the defendant, and declared the law as moved for by the defendant, and found upon the issues for the defendant. To which finding of the court and judgment, the plaintiffs excepted, and having incorporated the transcript of the judgment, offered in evidence, the testimony heard by the court, and the declarations of law, in their bill of exceptions, which was signed and sealed, they have appealed to this court.

To arrive at a correct understanding of the questions presented in this case, it will be necessary to refer to, and give a brief statement of, the cause originally instituted in Louisiana, which resulted in the judgment there, upon which the case now before us originated in this State.

It appears, from the transcript of the record of the fourth district court of New Orleans, that on the 3d day of January, 1862, the appellants, Eaton & Betterton, commenced their action by attachment against Levi Chapman, Ed. C. Carter, W. M. Ensign and (the appellee) P. Pennywit, upon a promissory note, for a sum certain; that the writ of attachment was levied upon a steamboat, the Thirty-fifth Parallel, averred in the petition to be the property of the defendants. Personal service was had on one of the defendants, Levi Chapman, and publication made as to the other defendants, all of the defendants being averred in the petition to be non-residents. After the seizure of the boat and the service upon Chapman, he executed a bond, with security, which was accepted by the sheriff, and the property attached released. On the 15th of January, 1862, a default was entered against all of the defendants, and on the same day, the record entry is: "On motion of Durant & Homer, of counsel for defendants, and on filing their answer, it is ordered that the default entered herein be set aside;" and on

the same day is the following entry:  " Now come the defend-
ants, by their attorneys, and deny all and singular the allega-
tions in plaintiffs' petition contained; wherefore they pray for
judgment in their favor for costs, and all further general and
equitable relief.  Signed, Durant & Homer, attorneys for defend-
ants."   On the 15th January, 1863, the entry is :   " On motion
of Durant & Homer, of counsel for defendants, it is ordered
that this cause be continued indefinitely."   No further entry
is made until January 12, 1864, when we find the following :
" This case came up for trial this day.   John Henderson, attor-
ney for plaintiffs, Durant & Homer, attorneys for defendants.
Plaintiffs offer in evidence the note sued on and annexed to
petition.   The evidence adduced in this case, having satisfied
the court of the justice of plaintiffs' claim, it is therefore
ordered, adjudged and decreed that the plaintiffs, Eaton &
Betterton, do have and recover from the defendants in suit,
Levi Chapman, Ed. C. Carter, W. M. Ensign and P. Penny-
wit, in salido, the sum of six thousand seven hundred and
ninety-five dollars and seventy-one cents, with 8 per cent. inter-
est from date of note until paid."

The consideration of this case must turn upon two princi-
pal inquiries : 1st. Had the fourth district court of New Orleans
jurisdiction of the person or property of the defendant ?   2d.
Did the defendant have such notice as would bind him person-
ally, or did he waive such notice by his appearance ?

The record of the proceedings in Louisiana affirmatively
shows that Pennywit, as well as the other defendants in that
court, were non-residents, and that Pennywit was not person-
ally served with notice; therefore the court did not have juris-
diction of his person at the commencement of the action, or
at the time of the levy of the attachment.

We think there can be no question that the court in Louisi-
ana, in a personal action, such as this was, instituted in the
courts of that State, did have jurisdiction over any property
of the defendant found there ; and the fact that the property
so found was a steamboat, would not in any manner change

the rule. It was not a proceeding, *in rem* against the boat by her name, but was a proceeding *in personam*, to subject the property of the defendants to the payment of their *debts*. The proceedings in the case in Louisiana, do not come within the law as held by the Supreme Court of the United States, in the case of *The Steamboat Hine v. Trevor, 4 Wallace, 555*, as contended for by the counsel of the appellee. In the case referred to, the facts were, that a collision occurred between the steamboats Hine and Sunshine, on the Mississippi river, in which the Sunshine was injured. Some time afterwards, the owners of the Sunshine caused the Hine to be seized, while she was in the jurisdiction of the State of Iowa, in a proceeding under the laws of that State, to ·subject her to sale in satisfaction of the damages sustained by their vessel. The cause was tried in the State courts, upon a plea to the jurisdiction ; and being decided against the Hine, it was carried to the Supreme Court of the United States, where it was held, in substance, that State statutes which attempt to confer on State courts a remedy for marine torts, or marine contracts, by proceedings strictly *in rem*, are void ; because they are in conflict with the act of Congress. The court, upon the point we are considering, say: "It is said that the statute of Iowa may be fairly construed as coming within the clause of the 9th section of the act of 1789, ' which saves to suitors in all cases, the right of a common law remedy, where the common law is competent to give it.' But the remedy pursued in the Iowa courts, in the case before us, is in no sense a common law remedy. It is a remedy partaking in all the essential features of an admiralty proceeding *in rem*. The statute provides that the vessel may be sued, and made defendant, without any proceeding against the owners, or even mentioning their names. That a writ may be issued, and the vessel seized, on filing a petition similar, in substance, to a libel. That after a notice in the nature of a monition, the vessel may be condemned, and an order made for her sale, if the liability is established for which she is sued." "Such," say the court, "is the general character of the steamboat laws of the western States."

" While the proceeding differs thus from a common law remedy, it is also essentially different from what are, in the west, called suits by attachment, and in some of the older States foreign attachments.   In these cases there is a suit against a personal defendant by name, and because of inability to serve process on him, on account of non-residence, or for some other reason mentioned in the various statutes allowing attachments to issue, the suit is commenced by a writ directing the proper officer to attach sufficient property of the defendant to answer any judgment which may be rendered against him. This proceeding may be had against an owner or part owner of a vessel, and his interest thus subjected to sale in a common law court of the State."

"Such actions may, also, be maintained *in personam*, against a defendant in the common law courts, as the common law gives; all in consistence with the grant of admiralty powers in the 9th section of the judiciary act."

Holding then, as we do, that the fourth district court of New Orleans had jurisdiction of the property of the defendants, and having that jurisdiction could legally proceed to judgment, and having done so, that judgment is valid and binding, so far as the property of the defendant is within the jurisdiction of the court.   Having thus disposed of this question, we come to the consideration of the second point of inquiry, which is: The defendant not having had personal service of notice, has he, by his voluntary appearance, waived such notice? or whether the appearance of attorneys, as is shown by the record in this case was made, would bind him personally for the amount of that judgment, in a suit based upon that judgment, instituted in the courts of this State?

The distinct point made by the plea is, that the defendant, Pennywit, did not have notice of the pendency of the suit in Louisiana, and never appeared to said suit, either in person or by attorney, or by any one duly authorized to enter his appearance.

In the case of *Barkman v. Hopkins, 11 Ark., 157,* this court

held that a judgment rendered in Louisiana against a citizen of Arkansas, without notice, or voluntary appearance to the action, is void, and can not be enforced in the courts of this State. The court also held that a plea, substantially the same as the one filed in this case, was a good plea, and offered a good defense to a suit upon a transcript of a judgment from the State of Louisiana, similar, in some respects, to the one we have under consideration. In that case, the facts averred by the plea were admitted by the demurrer. In this, they are contradicted by the replication and issue; and we must therefore refer to the record, to see whether the plea is sustained by it, or the evidence offered in its support.

The record of the fourth district court of New Orleans, offered in evidence, shows, affirmatively, that after the writ of attachment was levied upon the property of the defendants, and a personal service had upon one of the defendants, Carter, a judgment by default was entered; that the judgment by default was set aside on motion of the defendants, made by their attorneys; that their answer was filed, the case continued indefinitely, and the case set for trial, tried, and the judgment rendered. At every step of the case, during a period of some years, we find it persistently contested and defended by attorneys, whose names appear on the record, and are signed to the pleadings. These proceedings, we think, raise a strong *prima facie* presumption, that the defendant did appear by attorneys and defend the case. How has that presumption been rebutted? We find, in the bill of exceptions, the evidence of Charles G. Scott, who testified "that said defendant, from the first day of July, 1861, to the first day of July, 1864, was a citizen of the State of Arkansas, and was a resident therein, and during that time was not in the State of Louisiana;" which, the record shows, was all the evidence in the cause. Was this evidence sufficient to maintain the averments of the plea? We think not. The material averment of the plea was, that the defendant never appeared to the suit, either in person or by attorney, and that no one duly authorized entered

his appearances to such suit. Yet the record shows that there was an appearance, by attorneys, and continued until the final judgment.

It was not, as in the case of *Kimball, et al., v. Merrick, 20 Ark., 12*, the recital of the clerk that "the defendant appeared," and where the record afterwards showed that a judgment by default was rendered; and which this court held was not a sufficient record of appearance to give the court jurisdiction of the person of Merrick; but it is as full and complete an appearance of the defendant, by attorneys, as any one we can imagine, under the system of practice which permits attorneys to appear for their clients, without filing any warrant of attorney.

Under the common law, the rule was, as held in *1 Salkeld, 86*, that a party injured, or who complained of the unauthorized appearance of an attorney, had recourse alone upon the attorney, and could not contradict the record of such appearance; and this rule, slightly modified, was adopted in New York in an early case. *6 Johnson, 296*. But the rule, particularly in regard to a suit upon a judgment from a sister State, is different, and it is now settled, that the judgment debtor may successfully defend, by showing that he was not served with process or notice, and that the attorney who entered an appearance for him had no authority to do so. See *11 Howard U. S. R., 165; 5 Wendell, 148; 24 Texas, 551*, as ruling and well considered cases on this point, and also the case of *Barkman v. Hopkins, et al., supra.* And this defense, the defendant in this case set up by his plea; but in our own opinion, he has wholly failed to prove it; and, therefore, the circuit court erred in finding the issue on the record plea for him.

The court also erred in rejecting the certified transcript of the record of the judgment rendered by the fourth district court of New Orleans. The Constitution of the United States declares that full faith and credit shall be given, in each State, to the acts, records and judicial proceedings of every other State. *Art. 4, sec. 1, Cons. U. S.;* and by the act of Congress of May 26, 1790, it is declared " and the said records and judicial pro-

ceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the United States, as they have by law or usage in the courts of the State from whence the said records are or shall be taken."

Upon inspection of the transcript offered in evidence in the circuit court, we find it properly authenticated; and having decided that the fourth district court of New Orleans had acquired, by the appearance of the defendant, by attorneys, *prima facie* jurisdiction of the person of the defendant, the transcript of the record should have been admitted in evidence. And for these errors, this cause must be reversed, and remanded to the circuit court.